**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Wagner, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Derek Adickman, et al., <br><br> Defendants. | No. CV-19-03216-PHX-SMB <br><br> **ORDER** |

Plaintiffs filed a request for a preliminary injunction (Doc. 2) and a hearing was held on July 8, 2019. The Court has now considered the pleadings, testimony, exhibits from the hearing,[1] relevant case law, and arguments of counsel.

**I.  Background**

Plaintiff Gary Wagner ("Wagner") owns two companies: Giggling Marlin, Inc. ("GM Inc.") and Giggling Marlin S. de R.L. de C.V. ("GM Mexico"). Wagner started the Giggling Marlin brand about 35 years ago when he opened the Giggling Marlin Bar & Grille in Cabo San Lucas, Mexico. Wagner began making tequila branded as Giggling Marlin in 2015. Wagner owns federal trademarks for the "Giggling Marlin" under trademark nos. 4,860,349 (for tequila) (Ex. 1) and 4,444,166 (for restaurant services) (Ex. 2). GM Inc. has an importer permit issued by the Alcohol and Tobacco Tax and Trade Bureau with permit no. AZ-I-21043 (the "Importer Permit") (Ex. 3). GM Inc. has a wholesaler permit issued by the Alcohol and Tobacco Tax and Trade Bureau with permit

---
[1] Exhibit numbers refer to the exhibits as described in the Exhibit List presented at the hearing by Plaintiff and Defendant. (Doc. 26).

no. AZ-P-21076 (the "Wholesaler Permit") (Ex. 4). GM Inc. owns the tequila.

Defendant Derek Adickman ("Adickman") met Wagner in Mexico several years ago. The two began to discuss going into business together to sell the tequila. Ultimately, the parties came to some agreement and Wagner sent tequila to Adickman to store and sell. The tequila has always been stored in a detached RV garage at a home in Arizona owned by Keith Foulke (the "Home"). There is no relationship between Wagner and Mr. Foulke.

At some point, the parties signed a written agreement (the "Agreement"), but they disagree as to what the Agreement means. (Ex. 11).[2] Adickman testified that the Agreement was to start a company called Giggling Marlin Tequila, and he was to be 30% owner. Wagner testified that the Agreement was written to formalize their arrangement and Adickman was just a salesman who was to receive 30% of the profits. There is no dispute that Giggling Marlin Tequila had never been formally created as either a limited liability company or a corporation. There was no testimony nor is there anything in the agreement as to ownership of the tequila. There was no testimony about the purpose of the business. The Agreement says that the primary purpose "is to provide sales, services, goods, intel[l]ectual rights, properties and anything else related to the **Giggling Marlin Tequila** which are solely owned by **GW** for **Giggling Marlin Tequila**." (Ex. 11) (emphasis in original).

The working relationship between Adickman and Wagner deteriorated, and Wagner demanded return of all the tequila in March 2019. There are currently hundreds of cases of tequila stored at the Home. Adickman refused to return the tequila. Wagner offered to go to arbitration and Adickman refused. (Exs. 12 & 13).[3] Wagner learned that the Home where the tequila was stored was in foreclosure proceedings. The foreclosure was scheduled for July 9, 2019, but the morning of the hearing it was rescheduled for July 16, 2019. Adickman testified that he sent a wire transfer the morning of the hearing and that the foreclosure was going to be closed. The parties were unable to confirm that the

---

[2] The Agreement is also attached as Exhibit A to Adickman's Response. (Doc. 23, the "Response").
[3] An email from Wagner to Adickman recognizing the Agreement had an arbitration provision is attached as Exhibit B to the Response.

foreclosure was stopped altogether.

Wagner filed the current case (Doc. 1, "Complaint") and requested a preliminary injunction on May 17, 2019. (Doc. 2). The Complaint alleges claims for trademark infringement, unfair competition, breach of contract, conversion, and injunctive relief.

**II.      Legal Standard**

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action. "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis omitted) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this "serious questions" variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

   **1. Likelihood of Success/Serious Questions**

There was very little discussion at the hearing regarding Plaintiffs' likelihood of success on the merits of the claims. Defendant Adickman did not directly address the merits of the claims in his Response and instead argues that Plaintiffs have not shown

irreparable harm. The Court will however analyze the claims as alleged.

### a. *Trademark Infringement*

The Lanham Act provides that

> Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114 (1)(a). To prevail on a claim of trademark infringement, Plaintiff must show that he has a protected mark and that another is using a mark similar to the trademark which is similar enough to cause confusion or mistake or to deceive. *See La Quinta Worldwide, LLC v. Q.R.T.M, S.A. de C.V.*, No. CV 09-175-TUC-RCC, 2011 WL 13233546, at *2 (D. Ariz. February 16, 2011). "Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *Am. Circuit Breaker Corp. v. Or. Breakers Inc.*, 406 F. 3d 577 (9th Cir. 2005) (quoting *NEC Elecs. v. CAL Circuit Abco,* 810 F.2d 1506, 1510 (9th Cir. 1987)). In this case, the allegation is that Adickman is potentially selling genuine trademarked goods after permission to do so was revoked. There is no allegation that he is selling another tequila using the Giggling Marlin trademark.

The cases cited by Plaintiffs involve defendants who continue to run a franchise without permission. In those cases, the owner of the trademark has lost control over the mark because the franchisee is continuing to run the business without the oversight of the trademark owner. Those cases are distinguishable from this case where the quality of the good is not in question, just defendant's right to sell it. Therefore, the Court finds Plaintiffs have a low likelihood of success on the trademark infringement claim.

### b. *Unfair Competition*

The same standards apply in unfair competition claims as they do in trademark

infringement claims. "Generally speaking, the key question in cases where a plaintiff alleges trademark infringement and unfair competition is whether the defendant's actions create a likelihood of confusion as to the origin of the parties' goods or services." *Bird v. Parsons*, 289 F. 3d. 865, 877 (6th Cir. 2002). Like, the trademark infringement claim, this case does not involve confusion of a mark with an imitation product. There is a dispute about the right to sell a genuine product. Plaintiff is unlikely to succeed on the unfair competition claim.

### c. *Breach of Contract*

The Complaint alleges that "Defendant Adickman agreed to take reasonable steps to sell the Trademarked Tequila through an authorized distributor of liquor but failed to do so." (Complaint ¶ 48). The Complaint alleges an oral contract. (Complaint ¶ 19). There was little evidence to support a finding that Adickman did not take reasonable steps to sell the tequila through an authorized distributor.

### d. *Conversion*

The parties did not discuss which state law applies in this case, so the Court is applying Arizona law.[4] Arizona follows the definition of "conversion" found in the Restatement (Second) of Torts § 222(A). *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005). The definition says that "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Id.* (quoting Restatement (Second) of Torts § 222(A)(1)). In this case, Adickman admitted in testimony that GM Inc. or GM Mexico owns the tequila. He has refused to return the tequila. He is exercising control over the tequila that interferes with GM Inc.'s ability to do with it what it wants to. Plaintiffs have a strong likelihood of success on the conversion claim.

---

[4] *See Harris v. Polski Linie Lotnicze*, 820 F.2d 1000, 1002 (9th Cir. 1987) ("For many years it has been the rule that a federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits."); *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 112 (D. Ariz. 2010) ("[W]e apply the substantive law of the jurisdiction with the most significant relationship to both the occurrence and the parties.").

### 2. Irreparable Harm

Irreparable harm is harm for which there is no adequate remedy at law, such as money damages. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance. Demonstrating irreparable harm is not an easy burden to fulfill." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted); *see also Dalkita, Inc. v. Distilling Craft, LLC*, 356 F. Supp. 3d 1125, 1131 (D. Col. 2018). In their motion, Plaintiffs largely argued that the irreparable harm lies in the potential harm to the goodwill of the trademark based on the misuse. At the hearing, Plaintiffs also argued that the uncertainty surrounding the foreclosure is likely to cause them irreparable harm. As discussed above, the Court is unpersuaded that Plaintiffs are likely to succeed on their trademark claim. The potential foreclosure in this case, however, presents a unique circumstance.

Plaintiffs have proven to the Court that they are likely to succeed on the conversion claim because Adickman testified that GM Inc. or GM Mexico owns the tequila. Additionally, Defendant was only able to establish that the foreclosure had been stayed until July 16, 2019. If the foreclosure goes through, the fate of the tequila and Plaintiffs' ability to obtain it is unknown. Additionally, the tequila has sentimental value to Wagner. He developed the product as an extension of his bar and grill, an establishment he built in 1984 and solely owns. Between the uncertainty surrounding the foreclosure and Wagner's attachment to the product, the Court finds that Plaintiffs have met their burden of showing a likelihood of irreparable harm.

### 3. Balance of Equities

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) ("In assessing whether the plaintiffs

have met this burden, the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'").

Here, the alleged injury to Plaintiffs is, at a minimum, the potential loss of valuable goods owned by GM Inc., either through the foreclosure or removal to an undisclosed location. There is no dispute that the property is owned by GM Inc. Defendant Adickman, on the other hand, has not raised any potential injury other than his allegation that Wagner is attempting to "oust its minority shareholder[.]" The balance of the equities here weighs in favor of Plaintiffs.

### 4. Public Interest

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

As an initial matter, the parties do not dispute ownership of the tequila. The public has a strong interest in preserving the availability of a forum for the enforcement of property rights. And because Plaintiffs have shown a likelihood of success on their conversion claim, this factor weighs in favor of issuing a preliminary injunction.

## III. Conclusion

Based on the above conclusions, the Court finds that Plaintiffs have shown they are likely to succeed on the merits of at least one claim and that they are likely to suffer irreparable harm without an injunction. The Court also finds that the balance of equities tips in favor of Plaintiffs and that an injunction is in the public interest.

Accordingly,

**IT IS ORDERED granting** Plaintiffs' Motion for Preliminary Injunction (Doc. 2). Plaintiffs have requested "the return of the Trademarked Tequila, the F350 Truck, the forklift and all the documents owned by Plaintiff Giggling Marlin and/or Plaintiff Wagner."

(Complaint ¶ 57). Therefore, Defendant must make the above listed property available to Plaintiffs for pick up by no later than 10:00 a.m. on Friday, July 12, 2019.

**IT IS FURTHER ORDERED** that the parties shall show cause by July 23, 2019, as to why the Court should not stay the case pending arbitration, because both parties stated the Agreement requires them to arbitrate their dispute.

Dated this 9th day of July, 2019.

Honorable Susan M. Brnovich
United States District Judge