# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Wagner, Giggling Marlin Incorporated,<br><br>Plaintiffs,<br><br>v.<br><br>Derek Adickman, et al.,<br><br>Defendants. | No. CV 19-03216 PHX SMB<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE SUSAN M. BRNOVICH:**

Before the Court is the amended motion (ECF No. 238) for an award of attorney's fees filed by Plaintiffs/Judgment Creditors Gary Wagner and Giggling Marlin, Inc.

**I.   Background**

On March 12, 2021, at the conclusion of a four-day jury trial, judgment was entered in favor of Plaintiffs and against Defendant Adickman as follows:

> Judgment is entered on the claim for Trademark Infringement in favor of Gary Wagner in the amount of $1.00. Judgment is entered on the claim for Unfair Competition in favor of Gary Wagner in the amount of $1.00. Judgment is entered on the claim for Wagner's Breach of Contract Claim in favor of Gary Wagner in the amount of $0. Judgment is entered on the claim for Adickman's Breach of Contract Claim in favor of Gary Wagner. Judgment is entered on the claim for Wagner's Conversion Claim Against Adickman in favor of Gary Wagner in the amount of $0. Judgment is entered on the claim for Giggling Marlin's Conversion Claim Against Adickman in favor of Giggling Marlin, Inc. in the amount of $0. … Judgment is entered on the claim for Wagner's Breach of Fiduciary Duty Against Adickman in favor of Gary Wagner in the amount of $0. Judgment is entered on the claim for Adickman's Breach of Fiduciary Duty Against Wagner in favor of Gary Wagner. Judgment is entered on the claim for

>   Wagner's Claim for Fraud in favor of Gary Wagner in the amount of $87,250.31 and punitive damages of $250,000. Judgment is entered on the claim for Adickman's Claim for Fraud in favor of Gary Wagner. … Judgment is entered on the claim for Fraud by Non-Disclosure or Concealment in favor of Gary Wagner in the amount of $0 and punitive damages of $0. Judgment is entered on the claim for Alter Ego finding that Giggling Marlin Mexico was not the alter ego of Giggling Marlin, Inc. Judgment is entered on the claim for Adickman's Negligent Misrepresentation in favor of Gary Wagner. Judgment is entered on the claim for Adickman's Claim for Unjust Enrichment in favor of Giggling Marlin, Inc.

(ECF No. 144). Adickman appealed the judgment to the Ninth Circuit Court of Appeals. (ECF No. 153).

On October 22, 2021, the Court awarded attorney's fees and costs to Plaintiffs and against Adickman in the amount of $135,934. (ECF No. 160). Adickman appealed the award of attorney's fees to the Ninth Circuit Court of Appeals. (ECF No. 161).

In February of 2022 Plaintiffs filed applications for writs of garnishment on eight financial institutions. (ECF Nos. 169-84). Six of the writs were answered by the institutions averring they were not in possession of funds or property held by Adickman, and that Adickman did not have accounts at these institutions. (ECF Nos. 185-88, 191, 196). A writ of garnishment was served on an additional bank late 2022 and the garnishee answered that Adickman had no funds at that institution. (ECF Nos. 203-05).

The Ninth Circuit Court of Appeals affirmed the judgment against Adickman and the award of attorney's fees on January 18, 2023. (ECF No. 206). The Ninth Circuit further awarded attorney's fees on appeal to Plaintiffs and against Adickman and his co-Defendant Foulke in the amount of $53,848. (ECF No. 207).

On September 9, 2023, Plaintiffs/Judgment Creditors ("JC") filed a motion (ECF No. 208, *as amended by* ECF No. 211) seeking an order requiring Adickman to appear for a judgment debtor examination, and the motion was referred to the undersigned magistrate judge (ECF No. 209). In the motion JC averred Adickman "has failed to pay any portion of the judgment." The motion was granted and Adickman was required to

provide documents to JC and to appear for a judgment debtor examination. (ECF No. 212). The date and time set for the examination was later vacated and the examination reset several times, at JC's request. Adickman did finally appear for a judgment debtor examination on February 10, 2025. (ECF No. 231).

In the interim, on February 12, 2024, JC requested an order requiring Adickman's mother, Andrea Adickman ("Mrs. Adickman") to provide documents and appear for a judgment debtor examination. (ECF No. 216). JC cited Rule 69 of the Federal Rules of Civil Procedure and argued "[a]n examination of a judgment debtor is a type of discovery authorized by Rule 69(a) and state law under A.R.S. § 12-1631." (ECF No. 216 at 2). JC further averred:

> Upon information and belief, Andrea has been providing financial support and backing for Adickman and is aware of where he has bank accounts, how he is obtaining funds, and where he has hidden assets. An examination of Andrea is a type of discovery authorized by Rule 69(a) and state law under A.R.S. § 12-1631.
> Plaintiffs request this Court to order that Andrea be ordered to appear for a debtor's examination before a Magistrate Judge to answer questions concerning Adickman's property and how and from where Adickman is obtaining money and bring with her the documents listed on Exhibit A hereto. Upon information and belief, Adickman is hiding assets.

(ECF No. 216 at 2).

The motion was granted. The following language was in the order served on Mrs. Adickman: "**Andrea Adickman shall provide to Plaintiff/Judgment Creditor's counsel, no later than the close of business**" twelve days prior to the examination set for March 20, 2024, "**all documents [requested by JC]. …. Andrea Adickman is warned that a failure to comply with this provision of this Order may result in a finding of contempt and an award of sanctions**." (ECF No. 219) (emphasis in original). The order further warned that the failure to appear could cause a civil arrest warrant to be issued. (*Id.*). In a separate order Adickman was ordered to provide documents and appear for a judgment debtor examination the same day, i.e., March 20, 2024. (ECF No. 218). Both examinations were scheduled to take place at JC's attorney's office.

On March 20, 2024, the date set for the examinations, JC filed a notice that the judgment debtor examination of Adickman had been cancelled due to Adickman filing for bankruptcy that same day. (ECF No. 221). The notice did not mention the examination regarding Mrs. Adickman set for the same day.

On November 21, 2024, JC filed motions seeking orders requiring Adickman and Mrs. Adickman to appear for judgment debtor examinations. (ECF Nos. 222 & 223). The motions were granted and the examinations were set for January 9, 2025, and January 21, 2025, respectively. (ECF Nos. 224 & 225). The language warning of a contempt citation, quoted *supra*, was included in the orders setting the judgment debtor examinations. JC then sought an order allowing alternative service on Adickman (ECF No. 227), which motion was granted (ECF No. 229).

On December 30, 2024. JC's counsel sought to reset Adickman's judgment debtor examination from January 9 to February 3, 2025, and this motion was granted. (ECF Nos. 230 & 231).

On January 31, 2025, JC asked the Court to reset the examination of Mrs. Adickman,[1] stating:

> Andrea's debtor's exam was previously scheduled for January 21, 2025 at 1:00 p.m. Fifteen minutes before the exam counsel for Andrea, Yvette Banker,[2] emailed counsel that Andrea was having health issues and needed a 30-day extension. Ms. Banker communicated that she would let undersigned counsel know by Monday, January 28, (Ex. 1) what date would be best for Andrea, but undersigned counsel has not heard back from Ms. Banker. …

(ECF No. 233). Attached to the motion at ECF No. 233 is an email dated January 23, 2025, from Ms. Banker to JC's counsel, Mr. Maynard, stating "I am working with my client and her surgery dates as well as a new attorney." (ECF No. 233-1 at 2). Also attached to the motion is an email from Mr. Maynard to counsel for Adickman, dated January 16, 2025, stating Mrs. Adickman "was supposed to have produced subpoenaed

---

[1] Mrs. Adickman was required to produce documents to JC no later than January 14, 2025. (ECF No. 225).

[2] Ms. Banker has never entered an appearance as counsel for Mrs. Adickman.

- 4 -

documents yesterday for her debtors exam which is scheduled for Tuesday at 1pm.," indicating Mrs. Adickman did not provide the documents pursuant to the order at ECF No. 225.

Also on January 31, 2025, counsel for JC filed a motion seeking attorney's fees and costs, which states in its entirety:

> Plaintiffs/Counterdefendants, Gary Wagner and Giggling Marlin, Inc. ("Plaintiffs") submit this Application and Affidavit Re: Attorneys' Fees and Non-Taxable Costs based on the non-appearance of Andrea Adickman ("Mrs. Adickman") to her Debtor's Exam set for January 21, 2025 at 1:00 p.m. This motion is supported by the attached memorandum of points and authorities.
> 
> **MEMORANDUM OF POINTS AND AUTHORITIES**
> 
> Plaintiffs filed a Motion for Appearance and Examination of Mother of Judgment Debtor – Andrea Adickman on February 12, 2024 and received an Order setting the debtor's exam for March 20, 2024. Plaintiffs filed a Notice of Cancellation of Debtor's Exam on March 20, 2024 because Defendant Derek Adickman filed for bankruptcy. Plaintiffs filed another Motion for Appearance and Examination of Mother of Judgment Debtor- Andrea Adickman on November 21, 2024 once we learned that the bankruptcy court would not discharge the judgment in this case. The debtor's exam for Andrea Adickman was set for January 21, 2025 and she was ordered to produce certain documents by January 14, 2025 which she did not. On January 16, 2025, I contacted one of Derek Adickman's lawyers, Joe O'Connor, and advised him that I had not received any of the requested documents and that I anticipated that the debtor's exam would go forward as noticed. (Ex. 1) On January 21, 2025, I listened to a voicemail from Derek Adickman that said, since his debtor's exam had been continued, he thought his mother's exam was continued and she would not be appearing. I emailed Derek Adickman that I expected his mother's debtor's exam to go forward in the afternoon and if she did not show up, I would seek sanctions.
> 
> At 12:45 p.m. on January 21, 2025, 15 minutes before the debtor's exam, I received an email from Yvette Banker, an attorney stating that Mrs. Adickman was seeking to retain her firm and was going to have surgery for cancer in the near future, and they needed to postpone the exam. (Ex. 2) My court reporter had arrived, and we were ready to proceed.
> 
> I called into the Court and advised the Court of the status of the debtor's exam. After the short hearing, I contacted Ms. Banker and advised her that we could reschedule the debtor's exam, but I was seeking costs due


> to the late postponement, and I sent her the Court's availability for a debtor's exam.
>
> Attached is an invoice from the Court Reporting firm, for $431.30 (Ex. 3) for its appearance at the debtor's exam. Additionally, we request an award of $600.00 for an hour of Plaintiffs' attorney's time incurred for attending the debtor's exam and preparation of this motion. Undersigned counsel's current billing rate is $600.00 an hour.

(ECF No. 234).

Attached the the motion is counsel's sworn affidavit noting he is an experienced litigator, that his current billing rate is $600 per hour, and that "[a]lthough" he "billed numerous hours preparing for the debtor's exam, I did spend a half hour emailing and speaking with Ms. Banker and with the Court on the day of the debtor's exam and another half hour preparing this motion and affidavit." (ECF No. 234-1 at 10-11). Also attached to the motion is an invoice for court reporter's fees incurred January 21, 2025. (ECF No. 231 at 8). In a renewed motion for fees and costs (ECF No. 238), counsel for JC clarified they were seeking "a sanction against Mrs. Adickman in the amount of $1031.30 to cover the cost of the Court Reporter and one hour of undersigned counsel's time." (ECF No. 238).

On February 8, 2025, Mr. Barski entered an appearance on behalf of Adickman and "non-party Andrea Adickman." (ECF No. 236). Mr. Barski filed a response to motion for attorney's fees and costs on February 14, 2025, asserting:

> … Ms. Adickman is elderly and currently being treated for serious medical issues. Plaintiff noticed her deposition via a Judgment Debtor's Exam ("JDE") on January 21, 2025.
>
> Ms. Adickman was under the belief that the JDE was re-set along with her son's JDE to February 10, 2025 as per ECF No. 231. Plaintiff outlines in its Application that the Judgment Debtor attempted to communicate with Plaintiff's counsel prior to the Debtor's exam regarding his mother's examination. Plaintiff chose to go forward and incur the costs of the court reporter knowing that Ms. Adickman could not attend due to her health struggles. Plaintiff further incurred the sought attorneys' fees knowing that Ms. Adickman was seeking to mutually reschedule the examination. Thus, Plaintiff's sought attorneys' fees and costs we unnecessary and unreasonable in the context of this case.

- 6 -

> For these reasons, Ms. Adickman has shown excusable neglect and cause for her non-attendance and Plaintiff's fees and costs sought are unreasonable and unnecessary and should be denied.

(ECF No. 239).

In their reply in support of their motion for an award of attorneys fees, filed February 24, 2025, JC's counsel reiterates the statements made in their motion, arguing the "first time Mrs. Adickman's health was ever mentioned" was via Ms. Banker fifteen minutes prior to the time set for the examination. (ECF No. 241 at 1-2). [3]

It is noted that Adickman appeared for a judgment debtor examination on February 10, 2025, and presumably provided all of the documents sought by JC's counsel prior to the examination.

**II.    Analysis**

Federal Rule of Civil Procedure 69(a) addresses proceedings to collect a monetary judgment entered by the Court:

> (1) Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.
> (2) Obtaining Discovery. In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

The relevant state law, Arizona Revised Statutes Annotated § 12-1631, provides:

> A. When a judgment has been entered and docketed, the judgment creditor, at any time may:
>   1. Have an order from the court requiring the judgment debtor to appear and answer concerning his property before the court or a referee, at a time and place specified in the order.

---

[3] In an email sent to JC's counsel by Ms. Banker on January 21, 2025, at 12:45 p.m., Ms. Banker advised: "Mrs. Adickman is having health issues and needs a thirty (30) [day] extension as she is likely going to have surgery in the next few weeks to remove a cancerous growth." (ECF No. 238-1 at 5).

- 7 -

> 2. Have a subpoena issued compelling the judgment debtor to appear for deposition upon oral examination and answer concerning his property at a time and place specified in the subpoena.
>
> B. No judgment debtor shall be required to attend out of the county in which he resides.

A supplemental proceeding to collect a monetary judgment "is an inquiry into the affairs of the judgment debtor and the ascertainment that he owns certain property which may be applied in payment. The range of such inquiry may involve transactions with third parties…" *Lore v. Citizens Bank of Winslow*, 51 Ariz. 191, 195 (Ariz. 1938) (internal quotations omitted), *superseded on other grounds by rule as recognized in D.W. Onan & Sons v. Superior Ct., Santa Cruz Cnty.*, 65 Ariz. 255, 258-59 (Ariz. 1947). A judgment creditor may obtain discovery from nonparties. *See Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 335 (E.D. Pa. 1974), *cited in Brown v. Sperber-Porter*, No. CV-16-02801, 2017 WL 10409840, at *8 (D. Ariz. Nov. 6, 2017). *See also Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663, 2022 WL 16649519, at *2 (D. Ariz. Nov. 3, 2022). Discovery into a third-party's assets is permissible when the relationship between the judgment debtor and the third-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them. *Brown*, 2017 WL 10409840, at *8. *See also Raymond James & Assoc., Inc. v. Terran Orbital Corp.*, No. CV-19-01916, 2020 WL 6083433, *2 (C.D. Cal. 2020) (finding discovery into third-party assets should be allowed when there is "a reasonable suspicion as to the good faith of asset transfers between the judgment debtor and the nonparty," and also finding this is "a low standard" that "merely entails some minimal level of objective justification") (citations and internal quotation marks omitted)), *cited in Cramton*, 2022 WL 16649519, at *2.

Local Rule of Civil Procedure 54.2(c) requires a motion seeking fees and costs to cite the relevant legal authority upon which the movant seeks the award of fees and costs. Rule 54.2(c)(2) provides: "If the moving party claims entitlement to fees for preparing the motion and memorandum for award of attorneys' fees and related non-taxable

expenses, such party also must cite the applicable legal authority supporting such specific request." The motions should also discuss the various factors bearing on the reasonableness of the requested fees; note whether the fee contracted between the attorney and their client is fixed or contingent; reference the experience, reputation and ability of counsel; and reference the amount of hourly fees awarded in similar actions (often construed by the courts as the hourly "market rate" for attorney time in the same jurisdiction). In a circumstance similar to this matter, the Eastern District of California applied the "lodestar" method for assessing the reasonableness of requested attorney's fees when a judgment debtor failed to appear for an examination. *See First Midwest Equip. Fin. Co. v. Aero Transp., Inc.*, No. 18-MC-00017, 2018 WL 3915469, at *2 (E.D. Cal. Aug. 14, 2018).[4] That court concluded, *inter alia*, that counsel was required to supply evidence of the "market rate" for an attorney's time in the subject jurisdiction.

The motion for fees before the Court does not discuss most of the Rule 54.2(c) factors. In the instant matter counsel avers their current billing rate is $600 an hour, but does not supply any support for a finding that the market rate for experienced counsel pursuing collection of a judgment entered in the United States District Court for the District of Arizona is $600 per hour. Additionally, counsel seeks $600 for a half-hour of Plaintiffs' attorney's time incurred for emailing and speaking with Ms. Banker and with the Court, and a half-hour preparing the pending motion. It is arguable whether an ex parte discussion with the Court is compensable, and also arguable whether preparing the above-quoted-in-full motion required a half- hour of counsel's time.

---

[4] … The Supreme Court explained that the lodestar amount is to be determined based upon the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).
  Plaintiff has not provided any explanation of how the $800.00 in attorneys' fees was calculated. … Plaintiff has not presented information to show whether the number of hours worked is reasonable or whether the hourly rate sought by each attorney is consistent with the prevailing market rates. Thus, the Court cannot determine at this time whether the fees sought are reasonable ….
*First Midwest Equip. Fin. Co. v. Aero Transp., Inc.*, No. 18-MC-00017, 2018 WL 3915469, at *2 (E.D. Cal. Aug. 14, 2018).

- 9 -

The motion for an award of fees does not mention contempt, but notes JC's counsel advised Adickman that if Mrs. Adickman did not appear for the examination counsel would seek sanctions. The motion can logically be construed as one seeking an award of fees and costs as a sanction for Mrs. Adickman's failure to comply with an order of the Court. The order setting the examination warned Mrs. Adickman that a failure to comply with the order could result in a finding of contempt and an award of sanctions. "A court has the inherent power to punish for civil or criminal contempt any obstruction of justice relating to any judicial proceedings." *Lambert v. Montana*, 545 F.2d 87, 88 (9th Cir. 1976). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The purpose of a civil contempt sanction is to coerce the party in contempt to comply with the court's order in the future. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992).

To establish that civil contempt is appropriate, the JC must demonstrate by clear and convincing evidence that Mrs. Adickman violated a court order, and that the violation was not based on a good faith and reasonable interpretation of the order. *See United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010). If the JC makes this showing, the burden shifts to Mrs. Adickman to demonstrate that she "took all reasonable steps" within her power to insure compliance with the court's orders. *Hook v. Arizona Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997).

The record demonstrates that Mrs. Adickman violated an order of the court. Not only did Mrs. Adickman fail to appear for the latest scheduled examination, she failed to comply with the order requiring her to produce the documents requested by the JC prior to the scheduled examination. Because she has failed to comply with the court's order regarding the production of documents, notwithstanding any arguably good faith belief that the judgment debtor examination scheduled for January 21, 2025, would not

proceed,[5] a finding of contempt is warranted. *See In re Grand Jury Proceedings*, 801 F.2d 1164, 1166-70 (9th Cir. 1986) (affirming an order of contempt for failure to comply with a subpoena duces tecum); *Baker v. Limber*, 647 F.2d 912, 919 (9th Cir. 1981) ("A judgment-debtor's refusal to answer questions in a Rule 69 proceeding normally would justify a court's exercise of its contempt power."); *Suntek Transp. Co., LLC v. TCSL, Inc.*, No. CV-19-02364, 2024 WL 3951040, at *1 (E.D. Cal. Aug. 27, 2024).

With regard to any sanction pursuant to this finding of contempt, the Court has considerable discretion in fashioning an appropriate sanction to address contemptuous conduct. *See United States v. Flores*, 628 F.2d 521, 527 (9th Cir. 1980) (stating the Circuit Court of Appeals "defer considerably to the judgment of the district court in fashioning the appropriate sentence because of its proximity to the events out of which contempt springs."); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1364, 1369 (9th Cir. 1980) ("The choice among the various sanctions rests within the discretion of the district court."). In exercising this discretion the Court "should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders." *Flores*, 628 F.2d at 527 (internal quotations omitted). In assessing the appropriate amount of a coercive fine, the Court should "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanctions." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).

With regard to Mrs. Adickman, a third party, the magnitude of the harm threatened by continued contumacy is not great because there is only a reasonable suspicion that she may be in possession of assets which could be subject to satisfaction of the judgment against Adickman and, notably, Adickman has now appeared for a judgment debtor examination. Additionally, the sanction sought is likely to be effective in Mrs. Adickman

---

[5] Prior to the instance in question the judgment debtor examinations were each specifically and individually vacated by a court order.

at least producing documents, although her health may require some accommodation in appearing for a judgment debtor examination in the future.

### III. Conclusion

A fair resolution of the motion at ECF No. 238 would be to construe it as one seeking a monetary sanction against Mrs. Adickman for her contempt in failing to comply with the orders requiring her to produce documents and appear for the judgment debtor examination on January 21, 2025. The sanction should include the cost of hiring the court reporter for the examination, i.e., $431.30, and the amount of attorney's fees sought, $600, although the Court might consider reducing the amount of attorney's fees sought for want of documentation. Accordingly,

**IT IS RECOMMENDED that** the motion at ECF No. 238 be **granted**, and the motion at ECF No. 234 be **denied as moot**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Pursuant to Rule 72(b)(2), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 3rd day of March, 2025.

Camille D. Bibles
United States Magistrate Judge